[Cite as *Odell v. Odell*, 2026-Ohio-2966.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| ZACHARIAH ODELL | : | |
| | : | C.A. No. 30612 |
| Appellee | : | |
| | : | Trial Court Case No. 2023 UJ 00001 |
| v. | : | |
| | : | (Appeal from Common Pleas Court-  |
| DANIELLE ODELL | : | Domestic Relations) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on July 31, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately send a copy of the court's ruling to each party and note that action on the docket. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

*Mary K. Huffman*

_____
MARY K. HUFFMAN, JUDGE

LEWIS, P.J., and HANSEMAN, J., concur.

H. STEVEN HOBBS, Attorney for Appellant
ANTHONY C. SATARIANO, Attorney for Appellee

HUFFMAN, J.

{¶ 1} Defendant-appellant, D.O. ("Mother"), appeals from the Montgomery County Domestic Relations Court's judgment granting the motion of plaintiff-appellee, Z.O. ("Father"), for reallocation of parental rights, and designating Father as residential parent and sole custodian of the parties' minor child, H.O. Because the trial court did not abuse its discretion in finding that a change in circumstances had occurred, that the modification was necessary to serve the best interest of the child, and that the harm likely to be caused by a change of environment was outweighed by the advantages of the change of environment to the child, we affirm the judgment of the trial court.

## I. Background Facts and Procedural History

{¶ 2} The parties were divorced in Texas in October 2020. Their Texas divorce decree awarded both Father and Mother joint managing conservatorship over H.O., which was essentially the equivalent of a shared parenting plan in Ohio. Pursuant to that order, Mother was designated the residential parent and awarded child support, and Father was awarded parenting time.

{¶ 3} After the divorce, Mother moved to Ohio to be closer to family in early 2021, and Father later followed in 2022. Mother continued to be the residential parent and primary caregiver of H.O. while Father maintained support and parenting time with the child. At some point, the parties attempted to reconcile, but their interactions later became strained and contentious. Both parties eventually became romantically involved with other people.

2

{¶ 4} Around December 2022, H.O. was dropped off by Mother for a visit with Father, H.O. allegedly had a black eye and dog feces on her feet. Father questioned Mother about the bruise on H.O.'s face and the feces on her body, and shortly thereafter, Mother disappeared with H.O. for three weeks.

{¶ 5} Over the next several weeks, the parties communicated but had heated text exchanges. Mother threatened violence against Father's new partner (now wife) and his partner's minor child (now stepdaughter) and made comments that she wished his partner's child would die. She also told Father that she had postpartum depression and that she would withhold H.O. from Father for eight years. In turn, Father threatened to bring a gun to Mother's home, apparently in response to Mother's having a new boyfriend.

{¶ 6} Around February 2023, Father consulted with an attorney and initiated a petition for protection order on behalf of himself and H.O. in Clark County, Ohio (where Mother was living). He also notified Children Services about H.O.'s bruised eye. Father was issued a six-month civil protection order against Mother in March 2023 and was granted physical custody of H.O. at that time. Within a few months of obtaining the protection order, Father, along with H.O., his wife, and his stepdaughter, moved to Kentucky, and then, ultimately, to Indiana, resulting in a three-hour drive from their residence to Mother's.

{¶ 7} On September 1, 2023, Mother filed a petition for domestic violence civil protection order against Father in Montgomery County (which by then was her county of residence), but it was granted only as to herself, not H.O. On September 23, 2023, while the protection orders remained pending, Father filed a petition to register foreign judgment (the parties' divorce decree from Texas) and a motion for reallocation of parental rights, in which he sought to terminate shared parenting and to modify custody and parental responsibilities, including naming himself as residential parent and providing Mother with parenting time.

3

Father indicated in his motion that he had previously been granted a civil protection order against Mother in Clark County. He also moved for a temporary order of custody of H.O.

{¶ 8} Through a pre-trial order in December 2023, Father was granted temporary custody of H.O. pending a guardian ad litem ("GAL") investigation, and Mother was granted parenting time on Sundays from 1:00 to 3:00 p.m. Over the next several months, H.O. remained in Father's care, and the conflict between the parties continued.

{¶ 9} A GAL was appointed, performed an investigation, and prepared a recommendation for the trial court. The GAL spoke with both parents individually and then conducted a visit with them on the same day in the same setting, where the GAL observed H.O. with Father (along with Father's wife and stepdaughter) and with Mother. The GAL noted that, due to the geographic distance between the parties, Mother's limited parenting time, Mother's work schedule, and the GAL's schedule, there was little time to conduct the necessary observation.

{¶ 10} The GAL obtained school records from H.O.'s teacher and learned that H.O. was adjusting in school but was showing more aggression and hateful behavior on Mondays and Tuesdays after her Sunday visits with Mother. The teacher opined that H.O. was on track academically for her age and development but had experienced urinary accidents frequently at school early in the year. The GAL was concerned because H.O. had been absent fourteen days since school started because Father had court hearings in Ohio, but the principal of the school offered a letter stating that H.O.'s absences had not affected her academic or social progress. The GAL was hopeful that H.O.'s absences would decrease once the custody matter was resolved.

{¶ 11} The GAL did not interview two witnesses named by Mother, including a law enforcement officer and H.O.'s prior preschool teacher. The GAL found that both parties

4

used the legal system to attempt to gain leverage in the custody dispute. The GAL was concerned about the bruise on H.O.'s eye after being in Mother's care and the text messages sent from Mother to Father's wife, which the GAL believed were appalling and unnecessary. She was also concerned that H.O. was reportedly more aggressive at school after visiting Mother. She concluded that H.O. had a good relationship with her parents but believed that the parties had an acrimonious relationship and would not be successful in sharing parental duties.

{¶ 12} The GAL opined that H.O. was doing well in school and that the school did not have any concerns for her well-being in Father's care. She determined that it would not be in H.O.'s best interest to uproot her from Father when she appeared to have adjusted well. The GAL recommended that Father be named the legal and residential custodian of H.O. while endorsing parenting time for Mother.

{¶ 13} The matter proceeded to hearing before the magistrate, who considered the evidence presented, including witness testimony and the GAL's report. The magistrate's decision followed in June 2024. The decision explained that, when considering a modification of parental rights, the court was required to weigh numerous statutory factors to determine not only what was in the best interest of the child but also whether a continual ongoing change of circumstances warranted a change in the allocation of parental rights. The magistrate noted that the court was not bound by the GAL's recommendations.

{¶ 14} The magistrate observed that H.O. had adjusted to her parents' separation and that her basic needs were being met in Father's care. However, the magistrate opined that H.O.'s not being returned to Mother at the expiration of the Clark County protection order in September 2023 resulted in an emotional strain on the child, which was exhibited through H.O.'s acting out and regression in potty training. The magistrate found that the

5

parties' divorce decree was properly registered in Montgomery County but that it was not in H.O.'s best interest to reallocate custody to Father. The magistrate stated that Father had been a perpetrator of domestic violence against Mother; had taken H.O. farther away from Mother by moving to Kentucky and Indiana; and had utilized the legal system to extend the time that H.O. was withheld from Mother. The magistrate determined that Mother was to continue as the sole custodian and residential parent of H.O. and awarded additional parenting time to Father.

{¶ 15} Father filed objections to the magistrate's decision, arguing that, in addition to ignoring the GAL's recommendations, the magistrate's decision was based both on facts not in evidence and on incorrect findings of fact. Father argued, among other things, that there was no evidence in the record as stated by the magistrate that Father had showed up drunk at Mother's house trying to reconcile; that H.O.'s separation from Mother resulted in her emotional strain; or that Mother had taken parenting classes to correct her behavior. He also complained that the magistrate disregarded the GAL's report and failed to provide any reasoning as to why the GAL's independent recommendations were ignored.

{¶ 16} In October 2024, the trial court sustained Father's objections, vacated the magistrate's decision, and remanded the matter for a new hearing. After the initial hearing in this case, the magistrate who had conducted that hearing was appointed as a judge in the trial court. For judicial economy, instead of assigning the matter to another magistrate, it was heard by the trial court instead. The matter proceeded again to hearing on March 31, 2025.

{¶ 17} At the hearing, Father testified that when H.O. was in his care in Indiana, she was doing well in school. He also testified that Mother had previously created a ruckus at H.O.'s school in Indiana, allegedly causing the school to go into lockdown. At the time of the hearing, however, H.O. was back in Mother's custody following the magistrate's decision,

6

and Father had visitation with H.O. three weekends per month. According to Father, after Mother regained physical custody of H.O., H.O. had begun testing below average in nearly every subject at school and had been tardy to school seventeen times.

{¶ 18} Gregory Leet, Mother's fiancé, testified on behalf of Mother. Leet was living with Mother, Mother's mother, H.O., and Mother's other minor child. Leet was employed as a truck driver and worked approximately twelve hours per day. He explained that he and Mother coordinated their schedules so that H.O. was not in daycare. He stated that he had never slapped H.O. as punishment for poor behavior.

{¶ 19} Angela Ruggles, Mother's mother, testified that she believed that H.O. had separation anxiety and became upset when she had to leave Mother to go to school. She explained that H.O. had emotional meltdowns before school and believed that those meltdowns were due to H.O.'s prior separation from Mother when she was in Father's care for more than a year.

{¶ 20} Mother testified that Father refused to return H.O. at the expiration of the Clark County protection order because he alleged that Leet had hit her in the mouth. She testified that H.O. had tested behind in school but had improved. She acknowledged that H.O. had been tardy to school seventeen times, but she attributed H.O.'s attendance issue to the child's separation anxiety. Mother also acknowledged that she did not always provide Father with information regarding H.O.'s school and extracurricular activities.

{¶ 21} The GAL was not called to testify at the hearing by either party.

{¶ 22} After considering the statutory factors in R.C. 3109.04, the testimony of the witnesses, the witnesses' credibility and demeanor, and the GAL report, the trial court determined that Father should be designated as residential parent and sole custodian of H.O. The court concluded that a substantial change in circumstances had occurred since

the last award of parental rights and responsibilities in Texas, including that H.O. had struggled in school, had been tardy to school seventeen times while in Mother's care, and was underperforming in nearly every subject. The court also noted its concerns about Mother's hostile text messages; her threat to keep H.O. from Father for eight years; her behavior when she went to H.O.'s school (causing it to lockdown); her failure to consistently provide Father with information regarding H.O.'s school and extracurricular activities; and the GAL's finding that H.O. was more aggressive at school after visiting Mother. The court concluded that it was in H.O.'s best interest for Father to be awarded custody and that any harm in terminating the joint managing conservatorship was outweighed by the benefits that would accrue as a result of granting Father custody of H.O.

{¶ 23} Mother appealed the trial court's decision.

## II. Assignment of Error

{¶ 24} Mother's assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED IN TERMINATING THE PARTIES' SHARED PARENTING PLAN AND IN DESIGNATING THE DEFENDANT RESIDENTIAL PARENT AND CUSTODIAN.

{¶ 25} In her assignment of error, Mother argues that the trial court erred in concluding that it was in H.O.'s best interest to be in Father's custody. She contends that the trial court abused its discretion in terminating the parties' shared parenting plan and in designating Father as the residential parent and custodian simply because H.O. had seventeen tardy arrivals at school while in Mother's care; H.O. had below average performance in school; and Mother had texted threatening, derogatory messages regarding Father's wife and stepdaughter. She contends that H.O. suffered separation anxiety from

8

her due to their lack of contact for several months and that this resulted in H.O.'s tardiness at school. She argues that Father's custody of H.O. for several months contributed to H.O.'s below-average performance in school. She also claims that she was suffering from post-partum depression when she sent the menacing text messages.

{¶ 26} In Ohio, the allocation of parental rights and responsibilities is governed primarily by R.C. 3109.04. The statute directs courts to determine custody arrangements based on the "best interest of the child," which aims to determine the arrangement that will most support a child's health, safety, and overall well-being. R.C. 3109.04 sets forth the requirements and factors that a court needs to consider when making an allocation of parental rights and responsibilities.

{¶ 27} R.C. 3109.04(E) specifically addresses the modification of a prior decree allocating parental rights and responsibilities for the care of a child. It mandates that a court shall not modify a prior decree unless it finds, "based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child." In applying this standard, a trial court is required to retain the residential parent designated by the prior decree or the prior shared parenting decree unless a modification is in the best interest of the child and the harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child. R.C. 3109.04(E)(1)(a)(iii).

{¶ 28} It is well established in Ohio law that, when applying R.C. 3109.04(E)(1), whether a change in circumstances has occurred is a threshold inquiry that a court must consider before it proceeds to weigh the best interest of the child factors. *See Wooten v.*

*Schwaderer*, 2008-Ohio-3221, ¶ 4 (3d Dist.), citing *Fox v. Fox*, 2004-Ohio-3344, ¶ 38 (3d Dist.) ("A determination of whether a change of circumstances has occurred is a threshold inquiry that must occur before determining whether a modification would be in the best interest of the child."); *Olesky v. Olesky*, 2003-Ohio-5657, ¶ 28 (8th Dist.), citing *Hinton v. Hinton*, 2003-Ohio-2785, ¶ 12 (4th Dist.) ("The threshold inquiry is whether a change of circumstances occurred since the prior decree that would warrant a change of custody.").

{¶ 29} R.C. 3109.04 does not define the meaning of "change in circumstances." "Ohio courts have held the phrase pertains to 'an event, occurrence, or situation which has a material and adverse effect upon the child.'" *In re A.P.*, 2019-Ohio-139, ¶ 23 (2d Dist.), quoting *Pierson v. Gorrell*, 2012-Ohio-3878, ¶ 13 (12th Dist.). "In order to warrant the abrupt disruption of the child's home life, the change in circumstances must be one 'of substance, not a slight or inconsequential change.'" *Pierson* at ¶ 13, quoting *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997). "In determining whether a change in circumstances has occurred so as to warrant a change in custody, a trial judge, as the trier of fact, must be given wide latitude to consider all issues which support such a change." *Flickinger,* at paragraph two of the syllabus.

{¶ 30} Once the trial court determines that a change in circumstances has occurred, the court may proceed in weighing the best interest of the child. In determining the best interest of a child when considering a modification of a decree allocating parental rights and responsibilities, the trial court is required to consider all relevant factors, including, but not limited to:

>     (a) The wishes of the child's parents regarding the child's care;
>     (b) If the court has interviewed the child in chambers pursuant to
>     division (B) of this section regarding the child's wishes and concerns as to the

allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current

11

proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

R.C. 3109.04(F)(1).

{¶ 31} Additionally, in determining whether shared parenting is in the best interest of a child, the court may also consider:

(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;

(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;

(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;

(d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;

(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.

R.C. 3109.04(F)(2).

**{¶ 32}** When reviewing challenges to a trial court's finding of fact, we must accept the findings of fact "if they are supported by some competent, credible evidence." *State v. Ruberg*, 2013-Ohio-4144, ¶ 10 (1st Dist.). "A trial court judge has the power to exercise broad discretion in custody proceedings." *Flickinger*, 77 Ohio St.3d at 421, citing *Trickey v. Trickey*, 158 Ohio St. 9, 13 (1952), and *Gardini v. Moyer*, 61 Ohio St.3d 479, 484 (1991). Accordingly, we review a trial court's determination regarding the modification of a prior allocation of parental rights and responsibilities for an abuse of discretion. *See generally Flickinger*. "The reason for this standard of review is that the trial judge has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Flickinger* at 418. To find an abuse of discretion, we must find that the trial court's decision was unreasonable, arbitrary, or unconscionable. *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990).

**{¶ 33}** In this case, the crux of Mother's argument on appeal is that the trial court's reallocation of parental rights and responsibilities naming Father as the residential parent and sole custodian of H.O. and the court's termination of the parties' joint managing conservatorship (shared parenting plan) were not in H.O.'s best interest and constituted an abuse of discretion.

**{¶ 34}** The record shows that the trial court considered testimony from several witnesses—each of whom testified consistently with the preceding recitation of the timeline and facts. The record establishes that the circumstances changed since the parties' divorce

decree was issued in October 2020, and the trial court made numerous findings that supported a determination that a change in circumstances necessitated modification of parental rights and responsibilities to serve the best interest of H.O. These findings included: (1) H.O. had seventeen tardy arrivals at school while in Mother's care; (2) H.O. was testing below average in nearly every school subject while in Mother's care; (3) Mother sent menacing text messages that included threats of violence and wishes that a child would die; (4) Mother threatened to withhold H.O. from Father for a period of eight years; (5) Mother's behavior at H.O.'s school caused the school to go into lockdown; (6) Mother failed to update Father about H.O.'s school and extracurricular activities; (7) the GAL noted that H.O. acted more aggressively at school after her Sunday visits with Mother; and (8) the GAL recommended that Father be granted custody of H.O., and opined that the parties would not be able to effectively co-parent.

{¶ 35} In making these findings, the trial court properly considered the factors in R.C. 3109.04(F)(1) to determine the best interest of the child, as well as the factors in R.C. 3109.04(F)(2) for specifically determining whether shared parenting was in the best interest of the child. The trial court also found that the harm likely to be caused by a change of environment was outweighed by the advantages of the change of environment to the child. We must give wide latitude to the trial court in making this custody determination and cannot substitute our judgment for that of the trial court. On this record, we cannot say that the trial court abused its discretion by reallocating parental rights and responsibilities to Father and terminating the parties' joint managing conservatorship.

{¶ 36} Mother's assignment of error is overruled.

### III. Conclusion

{¶ 37} The judgment of the trial court is affirmed.

14

. . . . . . . . . . . . .

LEWIS, P.J., and HANSEMAN, J., concur.